### HUBBELL *v.* DREXEL & Co.

*(Circuit Court, E. D. Pennsylvania. January 23, 1882.)*

1. CORPORATE STOCK—RIGHTS OF PLEDGEE ON RETURN OF.

    The pledgee of stocks, in the absence of a specific agreement to the contrary, is entitled to a transfer of the stock to his own name. When so transferred, the particular shares become indistinguishable from the great mass of other stock, and the pledgor has no right to demand the return of any particular certificates. It is enough if the pledgee have at all times shares sufficient in number to answer the pledgor's demand upon repayment by the pledgor of the loan made to him.

2. SAME—NOT DISTINGUISHABLE INTER SESE—CERTIFICATES AS EVIDENCE.

    A share of stock is without ear-marks, and cannot be distinguished from other shares of the same corporation and issue. The certificates bearing dates and numbers are but evidence of title.

In Equity.

Bill in equity filed in December, 1880, by W. W. Hubbell against Drexel & Co., to compel the transfer to the plaintiff of 1,702 shares of Pennsylvania Railroad stock.

The case was heard upon bill, answer, and proofs, from which it appeared that on March 14, 1877, the plaintiff had deposited with the defendants 803 shares of Pennsylvania Railroad stock as collateral for a loan of $33,000 advanced to him; that, at the same time, the defendants purchased 700 shares of the same stock, the plaintiff paying them $30,000 therefor; that subsequently the plaintiff purchased other shares of the same stock, and deposited with the defendants a portion of the shares purchased by him for cash as collateral to secure the defendants in the new purchases; that transactions of a similar character were continued until July 17, 1877, when an account was stated between the parties, by which it appeared that the

defendants held 1,602 shares of Pennsylvania Railroad stock as collateral for advances, amounting to $46,472. The plaintiff had previously given the defendants for the advances made by them notes in the usual form taken by brokers, in which, among other things, it was provided that, upon default, the holder might sell the collateral without further notice, at either public or private sale. Upon July 17, 1877, a note in this form for $46,472, payable upon demand, was given by the plaintiff to the defendants.

In his bill the plaintiff charged that the defendants in fact, on July 17, 1877, had 100 shares of stock more than they accounted for, and that in fact the defendants had agreed with him not to enforce the contract contained in the collateral notes. In the plaintiff's evidence there was some testimony supporting these allegations, but his testimony was uncorroborated, and the answer of the defendants distinctly denied all the plaintiff's allegations upon this point.

It also appeared that shortly after the settlement of July 17, 1877, the market value of the stock having declined, the defendants called upon the plaintiff for additional margin, and, he being unable to furnish it, the defendants, with his consent, sold 600 shares out of the collateral they held. The stock left by the plaintiff with the defendants as collateral was immediately thereafter transferred into their name and new certificates issued to them.

In September, 1877, it appeared from the testimony that these particular certificates were transferred out of the name of Drexel & Co. into that of sundry other parties; but by the evidence offered by the defendants it appeared that this transfer was made simply for convenience in the deliveries, and that the defendants always had on hand a much greater number of shares, out of which they could have returned to Mr. Hubbell his shares upon the repayment of his loan.

In April, 1878, the defendants having notified the plaintiff to pay his note, upon his default, after due notice, sold the remaining shares at public auction at an average price of 28½. After crediting the plaintiff with the proceeds of this sale, there remained an indebtedness due the defendants of $1,600. As security for this amount, the defendants hold a second mortgage of $10,000 upon property in Philadelphia.

*Wm. Wheeler Hubbell*, for complainant.

*Samuel Dickson*, for respondents.

BUTLER, D. J. The plaintiff's case falls short of the measure of proof necessary to support a decree in his favor. While every

material averment of the bill is specifically denied by the answer, we have nothing in reply but the plaintiff's own statements, as a witness.

It is very earnestly urged that the answer admits an agreement to carry the loan and stock, so long as the collaterals should remain sufficient to protect the defendants against loss; and that this agreement has been violated by the sale of the stock. The language invoked to establish this alleged admission, however, must be regarded as referring to the written contract contained in the several notes,—which clothed the defendants with authority to decide when the collaterals ceased to be sufficient, and to sell on plaintiff's failure to heed a call for further deposit, or to pay the debt at maturity.

It is also urged that the answer, in connection with the defendants' previous written admission, supports the allegation that 100 shares of stock are not accounted for. Paragraph 4 of the answer, and the entry of April 14th on the $33,000 note, are referred to in support of this position. Standing alone and unexplained, they would seem to sustain the allegation. The paragraph specified plainly states that on the eleventh of April the defendants held 1,803 shares as collateral for two notes of $33,000 and $19,550, respectively,—1,140 shares on account of the former, and 660 on account of the latter; and the indorsement on the $33,000 note shows a receipt indorsed for "one hundred shares, * * * as additional collateral, added April 14, 1877." If this 100 shares is additional to the 1,803, as here indicated, the plaintiff is correct. It appears, however, that a few days prior to the 14th, (the exact date is uncertain,) the defendants received 200 shares on account of this note, which were not indorsed upon it. These 200 shares are included in the statement contained in paragraph 4, showing a credit of 1,803 shares, as before stated. It is quite probable, in view of other facts about to be alluded to, that the indorsement on the note, a few days later, has reference to a part of these 200 shares. Indeed it seems impossible to avoid such a conclusion. It is not only consistent with all other statements and entries of the defendants respecting the transactions and account, but is fully sustained by repeated admissions of the plaintiff,—one only of which need be particularly noticed. When the two notes referred to were consolidated, on July 17, 1877, and merged in one for $46,472.81, the balance of the stock then held as collateral was stated in the body of this note to be 1,603 shares,—the amount accounted for by the defendants. The plaintiff's explanation of this statement and admission cannot, of course, be accepted. It is not

only denied by the answer, but shown to be erroneous by the testimony of a disinterested witness as well.

The allegation that the defendants procured a transfer of part of the stock to themselves, on the books of the company, immediately on receiving the certificates from him, is immaterial. It was plainly their right to do so. If he desired to avoid this he should have contracted accordingly. When thus transferred it was unnecessary and impossible to distinguish between these shares and others held by the defendants. It is of no consequence, therefore, that in selling stock they may have disposed of these particular shares. They at all times had in hand an amount greatly in excess of the shares received from the plaintiff, and were, therefore, constantly prepared to keep their contract with him. A share of stock is without "ear-marks," and cannot, therefore, be distinguished, as has just been said, from others of the same corporation and issue. The certificates, bearing dates and numbers, are but evidence of title. On payment of his debt the plaintiff would have been entitled to a return of the number of shares which the defendants had received, nothing more. Such was the effect of his contract: *Nourse* v. *Prime*, 4 Johns. Ch. 490; *Allen* v. *Dykers*, 3 Hill, 593; *Gilpin* v. *Howell*, 5 Barr, 41.

For these reasons the bill must be dismissed, with costs.

McKENNAN, C. J., concurred.